# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Marquita Brimfield, as Class Representative on behalf of herself and others similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>South Carolina Department of Transportation,<br><br>　　　　Defendant. | C/A No.: _____<br><br><br>**COMPLAINT**<br>**(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, complaining against their former employer, Defendant South Carolina Department of Transportation ("Defendant" or "SCDOT"), would respectfully show unto this Honorable Court the following:

**PARTIES, JURISDICTION, & VENUE**

1.　This is a class action brought by Plaintiffs to address the sexually hostile working environment and discriminatory discharges inflicted upon Plaintiffs by SCDOT in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

2.　Plaintiff Marquita Brimfield is an individual residing in Richland County, South Carolina.

3.　The putative class is made up of former female members of the night shift housekeeping crew of Defendant South Carolina Department of Transportation who were assigned to clean Defendant South Carolina Department of Transportation under the supervision of Jerome Green from February 1, 2020 through April 2023.

4.　Defendant South Carolina Department of Transportation is a state agency

1

headquartered in Richland County, South Carolina.

5.     This Court has jurisdiction of the action under 42 U.S.C. § 2000e-5(t) and 28 U.S.C. §1345.

6.     Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391 because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

7.     Plaintiff Marquita Brimfield ("Brimfield"), as representative of the class, filed a timely charge with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No. 436-2022-01684) on July 22, 2022.

8.     The EEOC issued a Determination letter on April 6, 2024 finding that there to be cause to believe that Defendant violated Title VII against Brimfield and a class of female workers.

9.     The Dismissal and Notice of Right to Sue was issued on August 12, 2025.

10.    Brimfield has exhausted her administrative remedies.

11.    Because Brimfield has exhausted her administrative remedies, members of the class may join her as co-plaintiffs in the litigation. *See, e.g. Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968).

## **CLASS ACTION ALLEGATIONS**

12.    Brimfield brings this action on behalf of herself and all others who are similarly situated ("Night Cleaning Crew"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

13.    The class is so numerous that joinder of all members is impracticable. The

class consists of all female employees assigned by Roper Staffing Agency to work under the supervision of Jerome Green at SCDOT Headquarters from February 1, 2020 to April 31, 2022.

## FACTUAL ALLEGATIONS

14. Brimfield began working for Defendant on or about January 2022 as a housekeeper through Roper Staffing (the "Staffing Service").

15. Plaintiffs were jointly employed by Defendant and the Staffing Service.

16. Plaintiffs worked the night shift from 5:00 p.m. to 10:00 p.m. cleaning Defendant's headquarters at 955 Park Street in Columbia.

17. Defendant employed Green as the night cleaning crew supervisor.

18. In his role as night cleaning crew supervisor, Green was the sole agent of Defendant responsible for supervising Plaintiffs in their assignment to the night cleaning crew at SCDOT headquarters.

19. Green worked directly with the Staffing Service to request new cleaning crew staffing assignments.

20. Green also had the authority to terminate night cleaning crew assignments.

21. In his role as night cleaning supervisor, Green directed Plaintiff' duties.

22. Green has multiple criminal convictions, including two assault and battery convictions.

23. In his job application to SCDOT, Green falsely reported that he only had one assault and battery charge and that it had been "cleared."

24. Defendant did not run a background check or SLED report on Green before placing him as the sole supervisor on the night cleaning crew shift at SCDOT

headquarters.

25. Despite his criminal convictions of a violent nature, Defendant placed Green as the sole supervisor over Plaintiffs.

26. Green took advantage of his role as supervisor over a largely female night cleaning crew.

27. The Staffing Service reported several complaints and concerns regarding Green's conduct towards women throughout his tenure as night cleaning crew supervisor.

28. On February 5, 2020, a female night cleaning crew member complained to the Staffing Service about Green's conduct towards her, stating that Green's conduct made her uncomfortable.

29. The same day, the Staffing Service contacted Defendant to let it know that the first female night cleaning crew had complained about Green's conduct.

30. Also on February 5, 2020, a second female night cleaning crew member complained about Green's conduct towards her and indicated that she was considering making a formal complaint.

31. The same day, the Staffing Service contacted Defendant again to let them know about the second female night cleaning crew member's complaint regarding Green.

32. Defendant did not discipline Green after the notifications of the February 5, 2020 complaints by the two female night cleaning crew members.

33. Defendant continued to allow Green to be the sole supervisor of the night cleaning crew members.

34. When Plaintiff first started working at SCDOT in January 2022, another female housekeeper told Brimfield that Green often made sexual advances towards

female employees, and that if "you don't go along with it, he will fire you."

35.    On or around February 23, 2022, the Staffing Service assigned a male to the night cleaning crew at SCDOT headquarters.

36.    In response to the new assignment, Green told the Staffing Service not to send a male because he only wanted female crew members on his cleaning staff.

37.    On February 23, 2022, the Staffing Service reached out to Defendant, concerned about Green's request and stating its concern that the request violated Equal Employment Opportunity guidelines.

38.    In response, Defendant responded to the Staffing Service, acknowledging that there was no Bona Fide Occupational Qualification requiring that the night cleaning crew be staffed only with females.

39.    Defendant further stated that Green's direct supervisor, Darin Kyzer, would let Green know that this conduct was unacceptable.

40.    Despite acknowledging that Green's conduct was unacceptable, Defendant did not discipline Green as a result of the February 23, 2022, request to only send female staff.

41.    Green continued to be the sole supervisor of Plaintiffs after the February 23, 2022, request for only female staff.

42.    On March 1, 2022, the Staffing Service once again contacted Defendant regarding Green's conduct towards women, stating that he had yelled at a female night cleaning crew member to "get the fuck off [his] clock" and calling her a "dumb ass"

43.    Defendant did not discipline Green as a result of the March 1, 2022, complaint regarding Green's conduct towards yet another female staff member.

5

44. Green continued to be the sole supervisor of the night cleaning crew after the March 1, 2022, complaint regarding his conduct towards another female staff member.

45. Around March 14, 2022, while Brimfield was walking with Green to get on an elevator.

46. Green said to Brimfield, "look at that ass in them jeans." Plaintiff said, "excuse me?" Green replied, "Oh, you didn't hear what I said?"

47. A few days later, Green texted Brimfield, asking for her to "give him some," meaning sexual favors.

48. On Friday, March 25, 2022, Brimfield clocked in and began gathering her cleaning supplies in a bucket from a supply closet on the first floor. Green sent Brimfield to another floor to begin cleaning.

49. Brimfield texted Green to let him know she needed a spray nozzle.

50. Green came up stairs, went to the corner of a cubical, and began unzipping his pants.

51. Green then took out his erect penis and exposed it to Brimfield, saying, "touch it," and "are you scared?"

52. Brimfield was shocked by Green exposing his penis to her and soliciting her for sexual favors.

53. Brimfield got the spray nozzle and walked out of the room.

54. Brimfield was very embarrassed but finished her shift.

55. On Monday, March 28, 2022, Brimfield called human resources personnel at the Staffing Service and reported Green's behavior.

56. The Staffing Service employee Brimfield spoke to stated that other women had endured sexually harassing comments and behavior by Green.

57. Brimfield was forced to leave her job shortly after Green exposed himself to her.

58. Brimfield could not bear to return to a hostile environment where she had been victimized, as it was too traumatic.

59. Brimfield lost trust in SCDOT when she learned that Green had a pattern of victimizing women and that SCDOT had done nothing to protect them.

60. Plaintiff was deeply upset by Green's actions.

61. Green's conduct brought up traumatic memories of previous abuse.

62. Brimfield was already in counseling but had to seek additional sessions and treatment from her therapist to work through the impact of Green's behavior.

63. Defendant finally terminated Green over two months later, on June 6, 2022.

64. Defendant's separation notice to Green indicated the termination was based upon Brimfield's report of him; "numerous, documented complaints" of employees of the Staffing Service about his behavior; Green's February 2022 request that the staffing company "to only send females at this time," and "that several females stated you made them feel uncomfortable by your inappropriate comments and even a male employee indicated he was uncomfortable with the way you spoke to the females."

65. Defendant's termination memo stated that "[w]e have been able to determine a long-standing pattern of complaints, primarily from females, of your inappropriate comments, often of a sexual nature, as well as other complaints of you following them around, contacting them outside of normal work hours, or offering ride."

66. Defendant's memo further stated that "[m]ost staffers stated they had not reported their concerns for fear of retaliation and losing their jobs; based upon their observations of your past conduct of letting people go," concluding that current and past staffers" "indicate an abuse of your position and conduct inconsistent with our management expectations."

### FOR A FIRST CAUSE OF ACTION
**(Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964)**

67. Plaintiffs re-allege and incorporates by reference the allegations set forth above.

68. Plaintiffs are members of a protected class under title VII based on their sex, female.

69. At all times relevant to the claims set forth herein, Defendant was an "employer" of Plaintiffs within the meaning and definitions of 42 U.S.C. §§ 2000e(b)

70. At all relevant times, Plaintiffs were "employees" of Defendant within the meaning and definitions of 42 U.S.C. §§ 2000e(f).

71. Defendant is vicariously liable for the conduct of Green, as he supervised Plaintiff. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 775 (1998).

72. Defendant subjected Plaintiffs to grossly harassing and inappropriate sexual comments, gestures, and advancements from its employee Green.

73. Defendant unlawfully subjected Plaintiffs to a gender/sex-based hostile work environment of severe and pervasive sexual harassment by a supervisor.

74. Defendant subjected its female employees, including Plaintiffis, to *quid pro quo* sexual harassment.

75. Defendant was on notice of Plaintiffs' experiences of sexual harassment, and yet Defendant tolerated the perpetrator and allowed him to remain in a supervisory position over numerous female employees.

76. The acts constitute discrimination based upon sex in violation of Title VII.

77. Defendant's violations of Title VII were willful.

78. As a direct result and consequence of this discrimination, Plaintiffs have suffered and will continue to suffer economic damages, including back pay, loss of benefits, and compensatory damages, including emotional distress, mental anguish, and anxiety.

## FOR A SECOND CAUSE OF ACTION
### (Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964)

79. Plaintiffs re-alleges and incorporates by reference the allegations set forth above.

80. Plaintiffs were qualified for their position as housekeepers on the night cleaning crew staff.

81. Plaintiffs are member of a protected class, as they are female.

82. Title VII of the Civil Rights Act of 1964 prohibits employers from taking an adverse employment action position against an employee as a result of a discriminatory animus.

83. Defendant subjected Plaintiffs to sexual harassment, creating conditions that were so poor that no reasonable person in Plaintiff's position would stay in her job.

84. Defendant constructively discharged or directly discharged Plaintiffs, subjecting them to adverse employment actions in violation of Title VII.

85. As a direct and proximate result of Defendant's discrimination in violation of Title VII, Plaintiffs have suffered, and continue to suffer, lost wages, lost employment benefits, emotional distress, mental anguish, lost wages, loss of employment benefits, and other economic and non-economic damages.

86. As a result of Defendant's discriminatory conduct, Plaintiffs are entitled to all remedies available under Title VII, including but not limited to back pay, front pay, compensatory damages, punitive damages, reinstatement or other equitable relief, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order granting the following relief:

A. Enjoin Defendant from:

  i. Subjecting employees to discrimination and harassment based on sex; and

  ii. Retaliating against employees who engage in activity protected under Title VII;

B. Order Defendant to develop and implement appropriate and effective measures designed to prevent discrimination, harassment, and retaliation, including but not limited to policies and training for employees, supervisors, and managers;

C. Order Defendant to develop appropriate and effective measures to receive complaints of discrimination, harassment, and retaliation, as well as process for investigating such complaints;

D. Award actual and compensatory damages to Plaintiffs to fully compensate

her for her injuries caused by Defendant's discriminatory, harassing, and retaliatory conduct, including:

      i. Lost earnings and benefits;

      ii. Pre-judgement interest;

      iii. Emotional distress, mental anguish, and anxiety;

E.    Award punitive damages;

F.    Grant Plaintiffs their reasonable attorney's fees, costs and expenses;

G.    Award such additional relief as justice may require.

Respectfully submitted,

s/Jack E. Cohoon

Jack E. Cohoon (Fed Bar No. 9995)
Lydia Robins Hendrix (Fed Bar No. 14192)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, Suite 200 (29201)
P.O. Box 1929
Columbia, South Carolina 29202
Telephone: (803) 904-7914
Fax: (803) 904-7910
jcohoon@burnetteshutt.law
lhendrix@burnetteshutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

August 12, 2025